No. 21-1093

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GARY L. BOYLE,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Central District of Illinois, No. 19-cr-20019
The Honorable James E. Shadid

**REDACTED BRIEF FOR THE UNITED STATES**

DOUGLAS J. QUIVEY
  *Acting United States Attorney*

JEFFREY D. KIENSTRA
  *Assistant United States Attorney*
  *Office of the United States Attorney*
  *One Technology Plaza*
  *211 Fulton Street, Suite 400*
  *Peoria, Illinois 61602*
  *(309) 671-7050*

**TABLE OF CONTENTS**

Page

TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES............................iii

JURISDICTIONAL STATEMENT ................................................................. 1

ISSUES PRESENTED FOR REVIEW ............................................................. 2

STATEMENT OF THE CASE...................................................................... 4

    A.  Boyle's Offenses ........................................................................ 4

    B.  State and Federal Charges and Guilty Pleas ...................................... 6

    C.  Presentence Report...................................................................... 7

    D.  Sentencing Memoranda ................................................................ 9

    E.  Sentencing Hearing ................................................................... 10

        1.  Objections and guideline calculation ......................................... 10

        2.  Victim impact statements ...................................................... 11

        3.  Arguments and allocution ..................................................... 13

        4.  Sentence pronouncement....................................................... 15

    F.  Judgment and Appeal................................................................ 16

SUMMARY OF THE ARGUMENT ............................................................. 17

ARGUMENT ...................................................................................... 19

I.  Boyle Has Not Identified Any Reversible Error As To His Criminal
    History Score............................................................................... 19

    A.  Boyle Waived His Objection ........................................................ 20

B. The District Court Did Not Plainly Err in Calculating Boyle's
Guidelines Sentence ....................................................................... 23

   1. No error occurred, much less a plain one .................................. 24

   2. Boyle cannot show any prejudice ............................................. 27

II. Section 5G1.3(b) Does Not Apply, So The District Court Did Not Plainly
Err By Not Addressing It ................................................................ 30

A. Plain Error Review Applies .............................................................. 31

B. Boyle Has Not Shown that His State Conviction Plainly Qualifies
as Relevant Conduct, as Required to Trigger § 5G1.3(b) .............................. 31

III. Boyle's Sentence Is Substantively Reasonable And Well-Justified .................... 41

A. Standard of Review ....................................................................... 42

B. The District Court Did Not Abuse its Discretion in Imposing a
Below-Guideline Sentence ................................................................. 42

   1. Boyle's sexual abuse of ████████ warranted a life sentence ............ 43

   2. The district court sufficiently justified and implemented
that sentence ............................................................................ 44

CONCLUSION .............................................................................. 51

CERTIFICATE OF COMPLIANCE ........................................................ 52

CERTIFICATE OF SERVICE .............................................................. 53

# TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

Page(s)

**Cases**

*Crespo v. Colvin*, 824 F.3d 667 (7th Cir. 2016)..................................................28

*Gall v. United States*, 552 U.S. 38 (2007) ........................................................44

*Rita v. United States*, 551 U.S. 338 (2007) ......................................................42

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) ...............................20

*United States v. Bostic*, 491 F. App'x 731 (7th Cir. 2012)...............................43

*United States v. Bour*, 804 F.3d 880 (7th Cir. 2015) ....................................42, 43, 48-49

*United States v. Brodie*, 507 F.3d 527 (7th Cir. 2007)...............................20, 21

*United States v. Butler*, 777 F.3d 382 (7th Cir. 2015) ........................23, 37, 38

*United States v. Castro-Aguirre*, 983 F.3d 927 (7th Cir. 2020) ....................44

*United States v. Chaparro*, 956 F.3d 462 (7th Cir. 2020) ...............................39

*United States v. Clark*, 935 F.3d 558 (7th Cir. 2019) ................................38, 39

*United States v. Eckstrom*, 626 F. App'x 640 (7th Cir. 2015) ........................43

*United States v. Esch*, 832 F.2d 531 (10th Cir. 1987)....................................28

*United States v. Esposito*, No. 20-1124, 2021 WL 2385407
  (7th Cir. June 11, 2021) ...................................................................................48

*United States v. Fee*, 491 F. App'x 151 (11th Cir. 2012) ...............................28

*United States v. Flores*, 929 F.3d 443 (7th Cir. 2019).................................21, 22

*United States v. Fredrickson*, 996 F.3d 821 (7th Cir. 2021) ...........................36

*United States v. Hoffman*, 847 F.3d 878 (7th Cir. 2017) ...........................31, 40

*United States v. Klug*, 670 F.3d 797 (7th Cir. 2012) .......................................36

*United States v. Law*, 990 F.3d 1058 (7th Cir. 2021) .................................42, 43

*United States v. Nance*, 611 F.3d 409 (7th Cir. 2010) .................................................26-27

*United States v. Nania*, 724 F.3d 824 (7th Cir. 2013) ..................................................passim

*United States v. Olano*, 507 U.S. 725 (1993) ............................................................. 23, 31

*United States v. Orozco-Sanchez*, 814 F.3d 844 (7th Cir. 2016) ..................................... 48

*United States v. Porraz*, 943 F.3d 1099 (7th Cir. 2019) ............................................ 42, 44

*United States v. Price*, 775 F.3d 828 (7th Cir. 2014) ...................................................... 36

*United States v. Rachuy*, 743 F.3d 205 (7th Cir. 2014) .................................................. 31

*United States v. Ramirez*, 983 F.3d 959 (7th Cir. 2020) ........................................... 42, 47

*United States v. Reyes*, 365 F.3d 565 (7th Cir. 2004) ..................................................... 21

*United States v. Robinson*, 964 F.3d 632 (7th Cir. 2020) .......................................... 21, 22

*United States v. Schrode*, 839 F.3d 545 (7th Cir. 2016) ...................................... 26, 32, 35

*United States v. Scott*, 900 F.3d 972 (7th Cir. 2018) ...................................................... 20

*United States v. Smith*, 919 F.3d 1 (1st Cir. 2019) ........................................................ 28

*United States v. Turner*, 651 F.3d 743 (7th Cir. 2011) ................................................... 39

*United States v. Vasquez-Abarca*, 946 F.3d 990 (7th Cir. 2020) .................................... 42

*United States v. Viren*, 828 F.3d 535 (7th Cir. 2016) ................................................ 28, 29

*United States v. Williams*, 931 F.3d 570 (7th Cir. 2019) ............................................37-38

*United States v. Williams*, 946 F.3d 968 (7th Cir. 2020) ................................................ 29

**Statutes**

18 U.S.C. § 2251 .............................................................................................................. 6

18 U.S.C. § 2252A ............................................................................................................ 7

18 U.S.C. § 3553 .....................................................................................................passim

## Other Authorities

Fed. R. Crim. P. 52 ...................................................................................23

USSG ch. 5, pt. A, *et seq.* .............................................................8, 27, 28

USSG § 1B1.3, *et seq.*.........................................................................passim

USSG § 2G2.1 .............................................................................................7, 35

USSG § 2G2.2, *et seq.* .......................................................................passim

USSG § 3D1.2...........................................................................................passim

USSG § 3D1.4 ......................................................................................8, 28

USSG § 3E1.1 .......................................................................................8, 28

USSG § 4A1.2, *et seq.*.......................................................................26, 27

USSG § 4B1.5 ..........................................................................8, 27, 28, 40

USSG § 5G1.2.................................................................................................9

USSG § 5G1.3, *et seq.*........................................................................passim

# JURISDICTIONAL STATEMENT[1]

The jurisdictional statement in the defendant's brief is complete and correct.

---

[1] We use the following abbreviations for record citations: "R." followed by a number refers to a document in the district court record; "D.E." followed by a date refers to a docket entry in the district court record; "PSR" refers to the Presentence Investigation Report filed on January 4, 2021 (R. 60); "Sent. Tr." refers to the transcript of the sentencing hearing held on January 14, 2021 (R. 73); and "Def. Br." refers to the defendant's opening brief on appeal.

## ISSUES PRESENTED FOR REVIEW

*Introduction*: Gary Boyle recorded and live-streamed his sexual abuse of █ ███████. For that conduct, he pled guilty to seven counts of producing child pornography. He also pled guilty to an eighth count for possessing child pornography, based on images found on his phone. Separately, he pled guilty in state court to sexually assaulting ████████ on a prior occasion. With an offense level of 49, his advisory guideline sentence was life (subject to the statutory maximums), and would have been the same in any criminal history category. The district court concluded that Boyle deserved to spend the rest of his life in prison, and it imposed a sentence sufficient to achieve that outcome: fifty years on the federal offenses, consecutive to his forty-year state sentence.

*Issues*:

I.   Whether the defendant has identified any reversible error as to his criminal history score, when he waived any objection, has not shown that any error occurred (much less a plain one), and would have had the same guideline sentence regardless.

II.   Whether, in deciding to run the federal sentence consecutively to the state sentence, the district court plainly erred by not applying USSG § 5G1.3(b) (which, if applicable, would recommend a concurrent sentence), when the

2

defendant has not shown that his state conviction qualifies as relevant conduct to his federal offenses, as required to trigger that provision.

III. Whether the defendant's de facto life sentence is substantively reasonable in light of the unthinkable abuse and lifetime of suffering he inflicted on ██ ████████, and whether the district court adequately justified that sentence.

## STATEMENT OF THE CASE

A. Boyle's Offenses

In February 2019, law enforcement received a report of suspicious activity from Kik Messenger, a company that operates a smartphone messenger application through which users can send texts, pictures, and videos. PSR ¶¶ 11–12. Kik flagged several images and videos that had been uploaded by a particular account. *Id.* ¶ 12. An agent reviewed the materials and confirmed that they portrayed child pornography. *Id.*

An investigation revealed that, on February 4, 2019, the account posted four images and three videos to a group on the Kik application. PSR ¶¶ 16. Each file depicted a girl ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* The files show the child in various stages of undress, and some of them show her engaging in sexual activity with an adult male. *Id.* For example, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████

████████████

Officers traced the files to a home in Decatur, Illinois, where they executed a search warrant on February 21, 2019. PSR ¶¶ 12, 17–18. Defendant Gary Boyle lived in the home ████████████████████████. *Id.* 17–18. The interior of the home matched the background of the images and videos in question. *Id.* ¶ 20. Officers also found clothing items that matched the ones shown in the files. *Id.*

Boyle agreed to speak to agents. PSR ¶ 22. He admitted to engaging in sexual acts with ██████████████████████. *Id.* He stated that, on February 4, 2019, he ████████████████████████████████. *Id.* ¶ 23. Instead, he sexually abused her and "live-streamed his sexual abuse . . . to the other members in his Kik group." *Id.* He denied getting anything in return for doing so, but admitted that he had traded child pornography in return for other images on other occasions. *Id.* ¶¶ 23–24. He also stated that this was the only time he live-streamed his abuse. *Id.* ¶ 24. Boyle told agents "that he deserves to be put in jail for life or killed for what he did to ████████." *Id.* ¶ 25. Officers also seized Boyle's cell phone. *Id.* ¶ 19. An analysis revealed 100 images of child exploitation material in addition to the images and videos of ████████. *Id.*

Several days later, ████████████ disclosed that Boyle had been sexually abusing her since she was ███ years old. PSR ¶ 26. That meant the abuse had

continued for about three years. *Id.* ¶¶ 26, 97. She specifically recalled the day he

███████████████ and made videos of her, and she disclosed that Boyle used

sex toys on her. *Id.* ¶ 26.

B.  State and Federal Charges and Guilty Pleas

Charges soon followed in both state and federal court. In February 2019,

Boyle was charged in state court with over a dozen counts related to his sexual

abuse of ███████. PSR ¶ 120. He eventually pled guilty as part of a plea

agreement to a single count of predatory criminal sexual assault of a child. *Id.*

That count charged that, between October 10, 2010, and February 3, 2019, the

defendant knowingly committed an act of sexual penetration with ███, who was

under the age of thirteen, by placing his penis in her vagina for the purpose of

sexual gratification or arousal. *Id.* In September 2020, the state court sentenced

Boyle to forty years of imprisonment on that conviction. *Id.*

Meanwhile, a federal grand jury returned an indictment against Boyle in

March 2019. R. 1. Counts 1 through 7 each charged Boyle with sexual

exploitation of a child, for using a minor to engage in sexually explicit conduct

for the purpose of producing a visual depiction of that conduct, in violation of 18

U.S.C. § 2251(a) and (e). *Id.* at 1–6. These counts were each based on a different

image or video created on February 4, 2019. *Id.*; *see* PSR ¶ 16. Count 8 charged

Boyle with possessing the child pornography found on his phone on February

21, 2019, in violation of 18 U.S.C. § 2252A(a)(5)(b) and (b)(2). R. 1 at 6–7. Boyle

eventually pled guilty to all eight counts, without entering a plea agreement.

D.E. 09/16/2020. The district court accepted his pleas on October 1, 2020. R. 53.

C.  Presentence Report

The Probation Office then prepared a Presentence Report. To calculate the

Sentencing Guidelines, Probation placed each count into its own group and

calculated the offense level for each count. PSR ¶ 33. The seven production-of-

child-pornography counts each had base offense levels of 32, USSG § 2G2.1(a),

plus four levels for the age of the victim, § 2G2.1(b)(1)(A); two levels for

engaging in distribution, § 2G2.1(b)(3); and two levels because the defendant was

████████████████, § 2G2.1(b)(5). *Id.* ¶¶ 34–93. Probation also assigned an

additional two-level enhancement to four of the counts because they involved a

sexual act or sexual contact, § 2G2.1(b)(2)(A). *Id.* ¶¶ 52, 61, 70, 87. The production

counts thus each had adjusted offense levels of 40 or 42. *Id.* ¶¶ 34–93.

Probation arrived at a base-offense level of 18 for the possession-of-child-

pornography count, USSG § 2G2.2(a)(1), plus the following enhancements: two

levels for the age of the victim, § 2G2.2(b)(2); five levels for distributing materials

for valuable consideration, § 2G2.2(b)(3)(B); five levels for engaging in a pattern

of activity involving the sexual abuse or exploitation of a minor, § 2G2.2(b)(5);

two levels for the use of a computer, § 2G2.2(b)(6); and four levels because the

offense involved at least 300 images, § 2G2.2(b)(7)(C). PSR ¶¶ 94–99. That produced an adjusted offense level of 36. *Id.* ¶ 103.

Probation then calculated a single, combined offense level. To do so, it determined that altogether the counts represented a total of 7.5 units (one unit for each of the production counts, and .5 units for the possession count). PSR ¶ 104. That calculation required an additional five-level increase to the highest adjusted offense level (which was 42). *Id.* ¶ 106 (citing USSG § 3D1.4). The report also added a five-level enhancement under USSG § 4B1.5(b), because Boyle's offense was a sex crime and he had engaged in a pattern of activity involving prohibited sexual conduct. *Id.* ¶ 108. After a three-level reduction for acceptance of responsibility, USSG § 3E1.1, the total offense level was 49. *Id.* ¶ 109–11. Because the sentencing table only goes up to an offense level of 43, though, Boyle's offense level became 43. *Id.* ¶ 111 (citing USSG ch. 5, pt. A, cmt. n.2).

The report also calculated that Boyle had seven criminal history points, placing him in criminal history category IV. PSR ¶ 123. Three of those points came from Boyle's conviction in state court for predatory criminal sexual assault of a child. *Id.* ¶ 120. With his offense level of 43, Boyle's guideline sentence was "life," as it would have been in any criminal history category. *Id.* ¶ 162–63, 165. But because the statutory maximum term of imprisonment on Boyle's convictions was 230 years (thirty years on each of the production counts and

twenty years on the possession count), his guideline sentence became 230 years, or 2,760 months. *Id.* ¶ 165 (citing § 5G1.2(d)).

Boyle submitted two objections to the Presentence Report. PSR at 36–37. He objected to the two-level enhancement for using a computer, which applied to his conviction on Count 8. *Id.* at 36. He also objected to his criminal history category of IV, stating that "it overrepresents his criminal history." *Id.* at 37.

D. Sentencing Memoranda

Before the sentencing hearing, both parties submitted sentencing memoranda, commenting on the objections and arguing as to the appropriate sentence. For its part, the government argued that neither of Boyle's objections identified any inaccuracy in the Presentence Report, and that his ultimate guideline sentence would have been the same regardless. R. 62 at 3–4. The government asked the court to impose the guideline sentence, or 230 years. *Id.* at 15. It highlighted the egregiousness of Boyle's conduct and the lasting harm he inflicted, which warranted the most serious sentence the law allowed. *Id.* at 5–16.

In Boyle's memorandum, he first acknowledged that the use-of-a-computer enhancement had no impact on the guideline calculation. R. 63 at 2. As to his criminal history category, he agreed that the "government is . . . correct that when applying the guidelines, [he] was accurately assessed to be a Criminal History Category IV." *Id.* He clarified that his argument was "not that the

guidelines are misapplied," but only that adding three points for his state conviction overstated the seriousness of his criminal history. *Id.* at 2–3 (noting that "the guidelines range of life is correct"). As to the appropriate sentence, he argued that the court should impose the same sentence he received in state court—forty years of imprisonment—and should run the federal sentence concurrently to that undischarged sentence. *Id.* at 3–8.

E. Sentencing Hearing

1. Objections and guideline calculation

The court began the sentencing hearing by addressing Boyle's objections to the Presentence Report, starting with his criminal history. Sent Tr. 2–4. Defense counsel agreed that the objection was really "a 3553 argument," and that "there is no argument to be made that would affect the guidelines as to criminal history." *Id.* at 2–3. The court thus declined to rule on the objection, noting that Boyle could make that argument at the § 3553(a) stage of the hearing. *Id.* at 3. As to the use-of-a-computer enhancement, the court held that the enhancement was proper under the Guidelines, though its practice was not to rely on that enhancement in its sentencing decision. *Id.* The parties agreed, though, that those two levels had no impact on the guideline calculation—given the Guidelines' grouping rules, the calculation was driven entirely by the offense levels for the production offenses in Counts 1 through 7. *Id.* at 3–4.

10

The district court thus adopted the Presentence Report's calculation under the Sentencing Guidelines. Sent. Tr. 4. Again, that calculation produced a total offense level of 43 and a criminal history category of IV. *Id.* Though that would have produced a guideline sentence of "life," the statutory maximums limited the guideline sentence to a term of 230 years, or 2,760 months. *Id.*; PSR ¶ 165.

2. Victim impact statements

The court then heard victim impact statements from the girl and her mother. First, the prosecutor read a statement written by ████████████, his victim:

> I was sexually abused. Gary Boyle took photos and videos. Sometime I felt I shouldn't be alive. He hurt me and no ████████ should do that. Things trigger me: seeing a gray Dodge truck, hearing the name "Gary" or seeing it in things I read, certain roads my mom drives on; memories of my abuse plays over and over in my head. It gives me ugly thoughts and feelings.
>
> Gary made m[e] keep this terrible secret for as long as I can remember. It makes me angry. I was sad and scared. But now I feel so much anger. . . . I still struggle daily because this monster ████████.
>
> . . . . How could ██████ do this [to] me? I am ███ years old and my abuse started so long ago I can't even remember. Gary would abuse me and he would say I have to – he would say *I have to stop this*, but then he would never stop.
>
> Gary took things from me that I can't find in counseling or inside myself. I have to grow up with this. I still have to deal with this forever. This never goes away for me.
>
> Words cannot express the pain and the things that I had —I have had to go through. I had to █████████████ because he abused me. I wasn't allowed to be with my mom or my family when I needed them the most.

I feel like it was my fault. Maybe if I —if I would've told, I could be with my mom. I worry that people will think I enjoyed being abused. I am learning to love again —to love me again, and I am ███ years old.

I didn't want this life, but I am a survivor, and I will not let this define me or destroy me.

Sent. Tr. 6–7.

Next, the girl's mother (███████████████) spoke of the enduring pain and suffering that Boyle had inflicted on her and her children:

I am the mother of four children, three of which Gary abused. . . .

███████████████████████. . . . [W]hat I didn't know was that Gary was also grooming and sexually abusing my children.

As their mom, I always carry the guilt of not keeping them safe. My heart aches for them. . . .

███████████████████. It is my responsibility to make sure they are on the path to healing. I comfort them when they have bad dreams and are triggered. I am the one that has sleepless nights praying that they will come out of this situation okay. I am the one that [my daughter] talks to when she can't hold her secrets anymore. I am the one that listens to the memories of when Gary abused her. I am the one that apologizes for the things he has done over and over again. . . .

We never wanted this life. We deserved better. Yet here we are in this courtroom seeking justice. And I can tell you, no amount of prison time will ever be enough for what he has taken from [my daughters] and my family. No amount of restitution can pay for the losses my children have suffered. No amount of money can replace their self-love, their innocence, their worth, and their normal future. . . . It will never cover the amount of therapy that they will need for the rest of their lives. What Gary took is priceless. We can never get back or replace —or place a value on the things that he's stolen.

. . . . [I]mages and videos [of my daughter's abuse] are never going to go away. They will be shared and used over and over again by countless people around the world. There will be no end for her. [She] will have to go through a lifetime of counseling and treatment. Gary stole her childness, her innocence, her dreams, self-esteem, and self-worth.

[My daughter] no longer trusts. She is fearful of being alone. She has night terrors. She's scared to take showers. She is uncomfortable with herself. She isolates. She no longer likes hugs or to be touched.

. . . .

Nothing in life prepares you for things like this. These are the things people don't talk about or don't want to hear about. We are left to face it daily. Even through all of the trauma and the abuse [my daughter] faced, she is still a kind, loving, sweet child. She inspires me daily.

I remember sitting in the courtroom for the first time . . . hearing in detail about the images and videos that Gary took and shared of my baby, my little girl. All I could do was cry. In fact, I continued to cry the entire —the entire hour[-]long drive home. That day all I could think of is how amazing [my daughter] was to be able to smile and laugh. I thought if that had happened to me, I would just to want die; that sometimes death is better than living with all of this pain. I cannot even begin to imagine how she feels or what she goes through daily.

Her life will always be a challenge and I am going to continue to advocate for my girls. I will support them. We are survivors. We are no longer victims, and we will work towards a bright and better future every day. We are moving on with our lives. This will not define us.

Sent. Tr. 8–12.

3.   Arguments and allocution

The parties then presented their arguments regarding the appropriate

sentence. The government emphasized the egregious nature of Boyle's conduct.

13

Sent. Tr. 14–19. It noted Boyle not only possessed and traded child pornography, which itself causes great harm. *Id.* at 14–15. He also "exploited a child in his care for his own prurient pleasure and the sadistic pleasure of his group members," and he "used the minor victim to memorialize the darkest days of her life and commit her to a life sentence." *Id.* at 15. The government asked the court to impose the maximum sentence to reflect the seriousness of Boyle's offenses and the harm he inflicted on the victim. *Id.* at 15–19. It also asked for the sentence to run consecutively to Boyle's state sentence, as his federal offenses involved conduct and harm not accounted for by his state conviction. *Id.*

In response, defense counsel acknowledged the "terror and pain that [Boyle] had inflicted upon" ███████████. Sent. Tr. 19. She argued, though, that due to Boyle's age (thirty-six) and his forty-year state sentence, "the question that the Court really has to answer is *Do you ever want Gary Boyle to ever walk free or not*?" *Id.* at 24. She likewise argued that "the real question is: Does Gary Boyle deserve the last couple years breathing free air after having spent 40 in prison?" *Id.* She argued that, based on Boyle's acceptance of responsibility in this case and his own history of abuse as a child, he "should get at least a chance to walk free again in the world as an old man[.]" *Id.* at 25. Boyle next addressed the court and apologized for his conduct and expressed remorse for the harm he caused. *Id.* at 25–27.

4. Sentence pronouncement

The district court then explained its consideration of the § 3553(a) factors. It began by addressing defense counsel's question:

> [I]t's not my nature normally to respond to questions posed to me, but since you did pose it, 'The real question: Does Gary Boyle deserve a few years of breathing fresh air?' and the answer in my mind is no. That would allow him to share the same air as ███████, the one he sentenced to a lifetime of nightmares and self-doubt.

Sent. Tr. 28. The court explained to Boyle, "you sentenced ███████ to life, a life questioning herself, asking herself what she did wrong. You deserve the same sentence so then you can consider what you did wrong." *Id.* at 30.

In discussing the nature of Boyle's offense, the court noted that Boyle not only possessed images of child pornography, he sexually abused ███████ "and streamed [that abuse] for all of his sick and perverted friends on Kik Messenger to see, for her to live with forever." *Id.* at 30–31. As to Boyle's history and characteristics, the court acknowledged Boyle's age, his mental health conditions, and his history of abuse as a child. *Id.* at 29.

The court also acknowledged that, while it intended to keep Boyle in prison for the rest of his life, it did not need to impose the statutory maximum sentence to do so. Sent. Tr. 28. Accordingly, it imposed concurrent thirty-year sentences on each of the production counts, which occurred over the same day. *Id.* at 31. But it ran those terms consecutively to a twenty-year sentence on Boyle's possession

count, through which Boyle subjected other children "to the perverted and distorted and sick nature of those seeking the internet for their satisfaction." *Id.* at 31–32. That produced a total sentence of fifty years, or 600 months. *Id.* at 32. The court ordered that the federal sentence run consecutively to the undischarged state sentence for committing an act of sexual penetration against a child, which reflected a separate course of conduct. *Id.* It closed by explaining that, if Boyle served the entire combined sentence, "that would be a sentence of 90 years or nearly 90 years. If he manages to live to be . . . 126 years old, then he can have that fresh air that he requests today." *Id.*

F.  Judgment and Appeal

The district court entered judgment on January 19, 2021. R. 67. Boyle filed a timely notice of appeal that same day. R. 70.

## SUMMARY OF THE ARGUMENT

The district court did not commit any procedural error at sentencing, and it imposed a substantively reasonable sentence, so this Court should affirm.

First, Boyle objects to receiving criminal history points for the state conviction that, he contends, constitutes relevant conduct to his federal offenses. He waived that argument, though, by telling the district court that the Presentence Report correctly added three criminal history points for that offense. Even on plain error review, he could not prevail. The Guidelines' application notes expressly allow convictions that support an enhancement for engaging in a pattern of sexual abuse to receive criminal history points, too, so Boyle cannot establish any error. Regardless, Boyle's criminal history score had no effect on his guideline sentence—his offense level (49) was literally off the chart and would have produced the same term in any criminal history category.

Second, Boyle argues that the district court erred by failing to consider a guideline provision, USSG § 5G1.3(b), that, if applicable, would recommend that his federal sentence run concurrently to his state sentence. For that provision to apply, though, the state conviction would have to qualify as "relevant conduct" to his federal offenses of conviction under one of three particular subsections of the guideline that defines that term. Boyle cannot show on plain error review that it is "clear or obvious" that his state conviction did so. His sexual assault of a

17

child on one occasion (the state conviction) was not an act committed during or in preparation for his later exploitation of that child or possession of child pornography (as required for subsection (a)(1)). The subsection covering acts committed as part of the same course of conduct does not apply to production offenses, and Boyle's sexual assault on one occasion was not part of the same course of conduct as his possession of images of sexual exploitation of a number of children on a later date (as required for subsection (a)(2)). Those offenses involved different conduct that occurred in different time periods and inflicted different harms. Nor was Boyle's sexual assault of a child a harm that resulted from his later federal offenses (as required for subsection (a)(3)). Thus, Boyle has not shown that the district court erred, much less plainly so, by not applying this guideline provision before deciding to run the sentences consecutively.

Finally, Boyle's sentence is substantively reasonable. The district court imposed a below-guideline sentence, and Boyle cannot overcome the presumption of reasonableness on appeal or show that the lower court abused its discretion. He committed unthinkable acts of abuse against ████████ (and also victimized other children whose images he possessed), and his conduct inflicted lifetimes of pain and suffering on █████████ and her mother. The district court reasonably found that Boyle deserved to spend the rest of his life in prison for that conduct, and it structured the sentence to achieve that result.

## ARGUMENT

Boyle first offers two arguments that depend in part on the scope of relevant conduct under the Guidelines. He argues that he should not have received criminal history points for a prior state conviction because that conviction was relevant conduct to his federal offenses. He similarly argues that the Guidelines recommend that his federal sentence run concurrently to his undischarged state sentence, again on the belief that the state conviction constitutes relevant conduct. Boyle waived the first argument and forfeited the second. On the merits, unpacking those arguments requires a careful analysis of the scope of relevant conduct under the respective guideline provisions, but Boyle has not identified any error, much less a reversible one. Finally, Boyle argues that his de facto life sentence is substantively unreasonable. But that sentence, which represented a marked downward variance from the Guidelines, was amply warranted by Boyle's sexual abuse of ▮▮▮▮▮▮▮▮▮ and his documentation and broadcasting of that abuse over the internet.

I. Boyle Has Not Identified Any Reversible Error As To His Criminal History Score

Boyle first argues that the district court erred in calculating the guideline sentence by adding criminal history points for a prior conviction that, he argues, also qualified as relevant conduct to his federal offenses. Def. Br. 12. Boyle waived this argument, though, by expressly telling the district court that the

Presentence Report correctly added three criminal history points for that conviction. Even on plain error review, Boyle has not identified any error, as he correctly received three criminal history points for that conviction. Those points had no effect on the Guidelines calculation, either, as Boyle's off-the-chart offense level would have produced the same sentence—life—in any criminal history category, so Boyle cannot show an effect on his substantial rights.

A. Boyle Waived His Objection

At the outset, Boyle waived any objection to his criminal history score. He agreed that the Presentence Report correctly added three points for his state conviction, and he explained that he objected only to whether those points overstated his history for purposes of § 3553(a). Those statements waived any objection, which precludes appellate review of this argument.

"Waiver occurs when a criminal defendant intentionally relinquishes a known right." *United States v. Scott*, 900 F.3d 972, 974 (7th Cir. 2018) (quoting *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007)). While a mere failure to object may permit review for plain error, "[w]aiver of a right extinguishes any error and precludes appellate review[.]" *Brodie*, 507 F.3d at 530; *see also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) (stating that, for plain error review to apply, "there must be an error that has not been intentionally relinquished or abandoned").

20

Courts will find waiver in the sentencing context when a defendant has advance notice of the relevant issues and chooses to assert some objections and not others. *United States v. Flores*, 929 F.3d 443, 448–49 (7th Cir. 2019). Even more clearly, waiver applies when a defendant tells the district court he does not object to a particular issue. *Id.* As this Court has summarized, "where a defendant has access to the [presentence report], and knows of his right to object to it, objects to certain parts of the [report], and then states on the record that he does not have any others, 'this seems to us the paragon of intentional relinquishment' that warrants a finding of waiver." *United States v. Robinson*, 964 F.3d 632, 641 (7th Cir. 2020) (quoting *Brodie*, 507 F.3d at 531) (internal alteration omitted); *see also United States v. Reyes*, 365 F.3d 565, 567 (7th Cir. 2004) (finding waiver where the defendant objected to assessing criminal history points for one conviction but not another).

That exact sequence played out here. Boyle had advance notice of the Presentence Report's calculation of the Guidelines and its assessment of three criminal history points for his state conviction. *See* PSR at 36–37. In fact, he objected to his criminal history category, but only on the ground that it overstated the seriousness of his history; he did not argue that his criminal history score was incorrect. *Id.* at 37. He made that abundantly clear in his sentencing memorandum, where he agreed that the government was "correct

21

that when applying the guidelines, Mr. Boyle was accurately assessed to be a Criminal History Category IV." R. 63 at 2. He acknowledged that the Presentence Report assessed three criminal history points for his state conviction, and he disavowed any argument "that the guidelines are misapplied." *Id.* at 2. Instead, he raised his objection only as a mitigating argument under § 3553(a). *Id.* at 2–3; *see also* Sent. Tr. 2–3. He also confirmed at sentencing that he had no objections other than those reflected in the Presentence Report. Sent. Tr. 4.

This sequence shows that Boyle had advance notice and an opportunity to object; that he was aware of the addition of three criminal history points for this conviction and considered whether they properly applied; and that he chose to raise other objections but not this one. More, he expressly told the district court that the three points were proper and that his criminal history category was correct. R. 63 at 2; Sent. Tr. 2–3. That's waiver. *Flores*, 929 F.3d at 448–49; *Robinson*, 964 F.3d at 641.

Although a strategic reason is not necessary to find waiver, *Flores*, 929 F.3d at 448, this was a rational decision, too. As counsel acknowledged, and as discussed below, the criminal history category had no effect on Boyle's guideline sentence, which would have been "life" regardless. R. 63 at 3 ("Regardless, the guidelines range of life is correct[.]"). Forgoing an objection that would not have had any effect on the Guidelines, and focusing instead on arguments in mitigation, was a

reasonable sentencing strategy. This Court should therefore find that Boyle

waived this argument, which precludes appellate review.

### B.  The District Court Did Not Plainly Err in Calculating Boyle's Guidelines Sentence

Even absent waiver, Boyle would have to overcome plain-error review. Boyle

did not argue below that his state conviction qualified as relevant conduct to his

federal offenses, or that he should not receive criminal history points for that

conviction. *See* Sent. Tr. 2–3; PSR at p. 37; R. 63 at 2–3. He therefore forfeited that

argument if he did not waive it. *United States v. Olano*, 507 U.S. 725, 733 (1993). To

prevail on appeal, he would bear the burden of establishing that: (1) an error

occurred; (2) the error is plain, meaning it is clear or obvious; (3) the error

affected his substantial rights; and (4) the error seriously affects the fairness,

integrity, or public reputation of the proceedings. *Id.* at 734–36; *United States v.*

*Butler*, 777 F.3d 382, 388 (7th Cir. 2015); *see* Fed. R. Crim. P. 52(b).

Boyle cannot meet that standard. He has not shown an error, much less a

plain one, as the Guidelines expressly permit criminal history points for a prior

conviction that also supports the offense-level enhancement in question. He

cannot show any prejudice, either. Given his astronomical offense level, Boyle's

guideline sentence would be the same regardless of his criminal history category.

This Court should therefore affirm even if Boyle only forfeited this argument.

1.  No error occurred, much less a plain one

Boyle has not shown that the district court committed any error in calculating his criminal history score. He argues that his state conviction qualifies as relevant conduct to his federal offenses, and that he should not have received both an offense-level enhancement and criminal history points for that conviction.[2] Def. Br. 12. To the contrary, Boyle's state conviction would qualify as relevant conduct, if at all, by supporting an offense-level enhancement for engaging in a pattern of sexual abuse or exploitation of a minor. USSG § 2G2.2(b)(5). The Guidelines expressly permit criminal history points for convictions that trigger that enhancement, though. *Id.* cmt. n.5. Accordingly, the district court did not err, plainly or otherwise, in assessing those criminal history points.

Boyle refers to the concept of "relevant conduct" at a high level of generality, but evaluating his arguments requires a closer study of the pertinent definitions. As relevant here, the Guidelines define relevant conduct as follows:

> (1)  all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2)  solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions . . .

---

[2] Boyle also suggests (Def. Br. 12) that the district court conflated offense conduct and relevant conduct, but he does not identify any applicable guideline provision that requires distinguishing between the two, nor does he identify how this alleged error had any impact on his offense level or guideline range.

that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)   all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)   any other information specified in the applicable guideline.

USSG § 1B1.3(a).

As discussed in greater detail below, Boyle's state conviction could not qualify as relevant conduct under subsections (a)(1), (a)(2), or (a)(3). Sexually assaulting a child on a prior date (the state offense) is not an act that occurred during the production of child pornography on a later date, or as part of the collection of other images of child pornography, as required to meet subsection (a)(1). § 1B1.3(a)(1). Subsection (a)(2) does not apply to the production counts, as it applies solely to offenses that can be grouped under § 3D1.2(d). § 1B1.3(a)(2). As to the possession count, sexually abusing a child is not part of the same course of conduct as collecting child pornography—those offenses involved different conduct, harms, and time periods—so subsection (a)(2) does not encompass any of the counts. Subsection (a)(3), which covers harm that resulted from the acts in the first two subsections, does not apply either, as the state offense occurred before the federal offenses, and thus did not constitute harm resulting from those later offenses. § 1B1.3(a)(3).

25

If the state conviction qualifies as relevant conduct, then, it could only be under subsection (a)(4), which covers "any other information specified in the applicable guideline." § 1B1.3(a)(4). The guideline for possessing child pornography includes a five-level enhancement if "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor," USSG § 2G2.2(b)(5), and Boyle received that enhancement. That enhancement could arguably[3] be based in part on Boyle's state conviction for sexually assaulting a child. And ordinarily, a defendant would not receive criminal history points for a conviction that also triggers an offense-level enhancement. USSG § 4A1.2(a)(1); *id.* cmt. n.1.

Application note 5 to § 2G2.2 expressly addresses this situation, though, and creates an exception to that general rule. It clarifies that a § 2G2.2(b)(5) enhancement does *not* preclude the assessment of criminal history points: "A conviction taken into account under subsection (b)(5) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)." § 2G2.2 cmt. n.5; *United*

---

[3] Between his seven child-exploitation counts and the three-year pattern of abuse, Boyle had far more than the two instances of abuse necessary for this enhancement. § 2G2.2 cmt. n.1. As this Court held in a similar case, it is thus "far from clear" that Boyle's state conviction, which represented but one instance of abuse, actually supported the pattern enhancement and became relevant conduct in that respect. *United States v. Schrode*, 839 F.3d 545, 552 (7th Cir. 2016). Boyle thus could not establish plain error even without application note 5 to § 2G2.2, though that note removes all doubt.

*States v. Nance*, 611 F.3d 409, 414 (7th Cir. 2010) (confirming that the application note (which was then application note 3) "carves out an exception to the general rule that relevant conduct is not factored in a defendant's criminal history score"). Therefore, even if this enhancement were based in part on Boyle's state conviction, that would not prevent assessing criminal history points for that conviction. This application note forecloses Boyle's argument, so he cannot show a plain error.[4]

### 2.   Boyle cannot show any prejudice

Boyle's claim also fails for an even simpler reason: his criminal history score had no effect on his guideline sentence. Given his offense level of 49 (reduced to 43 to fit into the sentencing table, USSG ch. 5, pt. A, cmt. n.2), Boyle would have faced the same guideline sentence in any criminal history category. He thus cannot show that any error affected his substantial rights, as required to prevail on plain-error review.

---

[4] Chapter Four also includes a similar "pattern" enhancement, § 4B1.5(b), which Boyle received too. But an enhancement under Chapter Four does not exclude a conviction from receiving criminal history points under § 4A1.2. *Nance*, 611 F.3d at 413 n.4 ("We understand the cross-reference to § 1B1.3 in § 4A1.2, cmt. n.1 as advising courts to use § 1B1.3(a) to determine relevant conduct, even though that provision defines relevant conduct for purposes of chapters two and three of the Guidelines and § 1B1.3(b) defines relevant conduct for chapter four (where the criminal history provisions are listed).").

27

Boyle's offense level made his criminal history immaterial to the Guidelines. His eight offenses[5] each had adjusted offense levels ranging from 36 to 42. PSR ¶ 104. He then received a five-level enhancement for the number of units, *id.* ¶ 106 (citing § 3D1.4), and a five-level enhancement for engaging in a pattern of prohibited sexual conduct, *id.* ¶ 108 (citing § 4B1.5(b)), resulting in an offense level of 52, *id.* After a three-level reduction for acceptance of responsibility, *id.* ¶ 109–10 (citing § 3E1.1), Boyle's offense level became 49, *id.* ¶ 111. The Guidelines' sentencing table only goes up to an offense level of 43, though. USSG ch. 5, pt. A. Accordingly, Boyle's offense level became 43. *Id.* cmt. n.2. And the guideline sentence for an offense level of 43 is the same in all six criminal history categories: "life." USSG ch. 5, pt. A.

Any error in determining Boyle's criminal history category could not, therefore, have affected his substantial rights. This Court addressed the same situation in *United States v. Viren*, 828 F.3d 535 (7th Cir. 2016). There, the defendant had a total offense level of 43, but argued that he should have fallen in

---

[5] Boyle suggests in a parenthetical, without supporting argument, that the seven production counts may be multiplicitous. Def. Br. 14. That argument is waived as undeveloped, *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016), but the counts are not multiplicitous. *United States v. Esch*, 832 F.2d 531, 542 (10th Cir. 1987) ("The fact that multiple photographs may have been sequentially produced during a single photographing session is irrelevant. Each photograph depended upon a separate and distinct use of the children."); *United States v. Smith*, 919 F.3d 1, 16 (1st Cir. 2019) (same); *United States v. Fee*, 491 F. App'x 151, 157 (11th Cir. 2012) (same).

criminal history category II, not V. *Id.* at 539–40. This Court agreed, but noted that the error had no effect on the sentencing range: "Had the district court set [the defendant's] criminal history category at level II, his offense level would still have been 43. An offense level of 43 with a criminal history category of II carries a Guidelines sentence of life." *Id.* at 540. The defendant thus could not satisfy plain-error review: "Because the Guidelines sentence remains the same whether [the defendant] has a criminal history category of II or V, [the defendant's] substantial rights were not affected by the district court setting his criminal history category at V." *Id.*

The same is true here. Even accepting Boyle's argument on the merits, the district court still correctly calculated his advisory guideline sentence: life (reduced to 2,760 months by the statutory maximums). Sent. Tr. 4; PSR ¶ 165. Since that same guideline sentence would apply regardless of his criminal history category, Boyle cannot show that any error in calculating his criminal history score affected his substantial rights. In fact, Boyle never attempts to identify how this alleged error would have impacted his guideline range or his sentence. Because a defendant bears the burden on plain-error review, *United States v. Williams*, 946 F.3d 968, 971 (7th Cir. 2020), his failure to do so forecloses relief on this ground.

## II. Section 5G1.3(b) Does Not Apply, So The District Court Did Not Plainly Err By Not Addressing It

Boyle next argues that the district court failed to consider the Guidelines in deciding whether to impose his federal sentence consecutively or concurrently to his undischarged state sentence. Def. Br. 15–18. He argues that the Guidelines recommend concurrent sentences, as he asserts that his state conviction qualifies as relevant conduct to his federal offenses. *Id.* at 16–18. He thus argues that the court committed a procedural error by failing to consider a relevant guideline provision: USSG § 5G1.3(b). *Id.* at 15–16.

Boyle's argument is incorrect. While the district court did not address § 5G1.3, Boyle did not ask it to—which triggers plain error review—nor did the court need to do so. In short, as applied here, § 5G1.3 does not contain an applicable guideline provision—only a policy statement (subsection (d)) that leaves to a court's discretion whether to impose concurrent or consecutive sentences. While § 5G1.3 does contain a guideline provision (subsection (b)) that recommends concurrent sentences in certain circumstances, those circumstances are not present here. Subsection (b) applies only when a prior conviction qualifies as relevant conduct under three particular subsections of § 1B1.3(a). Boyle's prior conviction does not. The district court thus did not fail to consult any applicable guideline provision, so it did not commit any procedural error.

A. Plain Error Review Applies

Though Boyle asked the district court to impose concurrent sentences, he did not ask the court to apply § 5G1.3(b) or argue that the Guidelines recommend a concurrent sentence. R. 63 at 7. He thus forfeited that argument, so this Court reviews only for plain error. *United States v. Hoffman*, 847 F.3d 878, 882 (7th Cir. 2017); *United States v. Rachuy*, 743 F.3d 205, 211 (7th Cir. 2014). The first two elements of that standard—that the court committed an "error" that is "plain," *Olano*, 507 U.S. at 734–36—are dispositive here.

B. Boyle Has Not Shown that His State Conviction Plainly Qualifies as Relevant Conduct, as Required to Trigger § 5G1.3(b)

Boyle is mistaken in arguing that his state conviction qualified as relevant conduct to his federal offenses, so as to trigger § 5G1.3(b). As before, he refers to the concept of relevant conduct in broad strokes. Evaluating his argument, though, requires considering the specific guideline provisions at issue and applying the facts of this case to the language of those provisions.

To begin with, when a defendant faces sentencing while still subject to an undischarged term of imprisonment from another case, § 5G1.3 recommends that the instant sentence run concurrently to the undischarged sentence only in narrow circumstances. In particular, § 5G1.3(b) recommends a concurrent sentence only when the undischarged sentence "resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions

of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct)." § 5G1.3(b).[6]
A defendant bears the burden of establishing that an undischarged state sentence
qualifies as relevant conduct to his federal offenses under those provisions.
*United States v. Nania*, 724 F.3d 824, 833 (7th Cir. 2013). For undischarged
sentences that do not fit those narrow circumstances, the Guidelines do not
contain an applicable guideline provision—only a policy statement.[7] § 5G1.3(d).
That policy statement leaves to a court's discretion whether to impose the
sentences concurrently, partially concurrently, or consecutively, to achieve a
reasonable punishment for the instant offense. *Id.*

Accordingly, Boyle must show that his state offense constituted relevant
conduct to his federal offenses under any of three particular subsections of the
definition of "relevant conduct"—subsections (a)(1), (a)(2), and (a)(3) of § 1B1.3.
§ 5G1.3(b). As noted above, those subsections encompass the following conduct:

> (1) all acts and omissions committed . . . by the defendant . . . that
> occurred during the commission of the offense of conviction, in
> preparation for that offense, or in the course of attempting to avoid
> detection or responsibility for that offense;

---

[6] This guideline has been amended since *Nania*, upon which Boyle relies; it no longer
requires that the prior conviction increase the offense level for the instant offenses.
*Schrode*, 839 F.3d at 551.

[7] Other subsections apply when the defendant committed his federal offense while
serving the undischarged term, or when he faces an anticipated sentence in another
case, § 5G1.3(a), (c), but those provisions are not at issue here.

> (2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction; [and]
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions[.]

§ 1B1.3(a). Notably, the subsections subject to § 5G1.3(b) do not include subsection (a)(4) ("any other information specified"), nor do they include subsection (b), which governs the scope of relevant conduct in applying Chapters Four and Five of the Guidelines.

Boyle cannot show that his state conviction qualifies as relevant conduct to his federal offenses under the three pertinent subsections:

*Subsection (a)(1)*. As relevant here, this subsection covers all acts committed during or in preparation for the federal offenses of conviction. § 1B1.3(a)(1). Boyle's state conviction was for committing an act of sexual penetration against a child under the age of thirteen, on or before February 3, 2019. PSR ¶ 120. That was not an act committed during or in preparation for his federal offenses— exploiting a child for the purpose of producing child pornography on a different date (February 4, 2019), and possessing sexually explicit images and videos on his phone.

As for the production counts, Boyle's sexual penetration of a child on one prior occasion is not an act that occurred during his exploitation of that child on

the later, distinct occasions that gave rise to the federal convictions. Nor did Boyle commit the first instance of sexual abuse in preparation for the later instances of abuse.[8] The state conviction is thus not relevant conduct to the production offenses on this basis.

Likewise, Boyle's sexual penetration of a child was not an act committed during or in preparation for his possession of child pornography, an entirely separate form of misconduct. There is no suggestion, for example, that Boyle photographed or recorded the instance of abuse that gave rise to his state conviction, or that he possessed that image along with the images that gave rise to his possession conviction. Rather, his state offense constituted a distinct act, so it does not qualify as relevant conduct under this subsection.

*Subsection (a)(2)*. Next, subsection (a)(2) includes acts committed as part of the "same course of conduct or common scheme or plan" as the offense of conviction. § 1B1.3(a)(2). This subsection does not apply to all offenses, though. It applies only to offenses "for which § 3D1.2(d) would require grouping of multiple counts." *Id.* Section 3D1.2(d), in turn, allows grouping for possession

---

[8] Perhaps, in some circumstances, engaging in sexual activity with a child on one occasion could be an act of grooming for the creation of child pornography during a later instance of abuse. Boyle does not make that argument, though, nor does the record reflect that Boyle's state conviction in fact occurred in preparation for his exploitation of the child during his federal offenses. Boyle thus cannot show on plain error review (under which he bears the burden of establishing an error) that the prior conviction constitutes relevant conduct in that respect.

offenses (indexed at § 2G2.2), but not production offenses (indexed at § 2G2.1). § 3D1.2(d); *Schrode*, 839 F.3d at 549 ("Production of child pornography is not a groupable offense."). Accordingly, this subsection does not apply to Boyle's production offenses (Counts 1 through 7).

To qualify as relevant conduct under this subsection, then, Boyle's state conviction would have to be part of the "same course of conduct" or "common scheme or plan" as his possession of child pornography, as charged in Count 8. § 1B1.3(a)(2). To be part of a "common scheme or plan," offenses "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *Id.* cmt. n.5(b)(i). Offenses that do not meet that definition can still qualify as part of the "same course of conduct" if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses," considering the "similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* cmt. n.5(B)(ii).

Boyle's offenses do not fit those descriptions. Boyle's state conviction was for sexually penetrating a child on one occasion. The federal offense in question entailed his possession (as much as three years later) of images and videos of children engaged in sexually explicit conduct. Those offenses occurred at

35

different times, and they involved different conduct that inflicted different harms in different ways. The conduct underlying the state conviction was the act of abuse itself; the conduct underlying the federal offense was Boyle's possession of images and videos. *See* PSR ¶¶ 16, 19, 120. In fact, possessing child pornography is unlawful under federal law even when it does not depict child abuse or independently unlawful conduct. *See United States v. Fredrickson*, 996 F.3d 821, 824–25 (7th Cir. 2021); *United States v. Price*, 775 F.3d 828, 838–39 (7th Cir. 2014).

The respective offenses also "target different conduct to protect different interests." *Nania*, 724 F.3d at 841. Whereas the state offense addresses "the abusive conduct itself," the federal offense addresses "the memorialization" of sexually explicit conduct in child pornography. *Id.* The creation of "a permanent record" of that conduct "carries additional consequences" beyond the sexually explicit conduct itself. *Id.* The victims suffer a "new injury" every time those materials are viewed, and federal child pornography offenses thus "focus[] on the enduring harm to the child victims" caused by the creation and possession of those materials. *United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012).

The only overlap Boyle identifies is that ▮▮▮▮▮▮▮▮ was the victim of his state conviction, and her images were also among the images on his phone that were relevant conduct to his conviction for possessing child pornography. *See* PSR ¶ 96. ▮▮▮▮▮▮▮▮▮ was not the only victim of his federal offense,

36

though—Boyle possessed at least 100 child-exploitation images of children other

than ████████. PSR ¶¶ 19, 99. The sets of victims are thus not the same. *See*

§ 1B1.3 cmt. n.5(B)(i) (noting that offenses could be connected through "common-

ality of victims" if "the same investors were defrauded on an ongoing basis").

    The offenses were not otherwise connected. The state conviction did not

charge Boyle with recording the abuse, *see* PSR ¶ 120, nor is there any suggestion

that Boyle did so on that occasion, so that abuse was not part of the conduct that

produced the images relevant to Boyle's possession of child pornography. In

addition, the state offense was charged to have occurred on or before February 3,

2019, *id.*, which is the day before Boyle took the images of ████████ that were

relevant conduct to his possession conviction, *id.* ¶¶ 16, 96.[9] Boyle had abused ██

████████ for three years, *id.* ¶¶ 26, 97, so the conduct underlying his state

conviction could have occurred three years earlier. Since Boyle bears the burden

of establishing not just an error, but a "clear or obvious" one, *Butler*, 777 F.3d at

388, the possibility of such a large gap in time weighs heavily against him.

§ 1B1.3 cmt. n.5(B)(ii) (noting that gaps in time can weigh against finding

offenses to be part of the same course of conduct). *See United States v. Williams*,

---

[9] The Presentence Report does not indicate that any of the child exploitation
materials Boyle possessed depicted ████████, except for the images and videos he
took and distributed on February 4, 2019. *See* PSR ¶¶ 16, 19.

931 F.3d 570, 573 (7th Cir. 2019) (holding that a defendant bears the risk of an ambiguous record on plain error review). And again, the offenses involve different conduct (sexually penetrating a minor, versus possessing images) that inflicts different harm (the abuse itself, versus the permanent record of sexually explicit conduct).

Thus, at most, Boyle has shown that one of the victims of his later possession of child pornography was also the victim of his prior sexual assault. Given the different time periods, conduct, and harms, that falls short of showing that the offenses are "substantially connected" to each other, as required to make them part of a common scheme or plan. § 1B1.3 cmt. n.5(B)(i). Those same factors preclude a finding that the offenses constitute part of the same course of conduct. *Id.* cmt. n.5(B)(ii) (noting that "where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity"); *see also United States v. Clark*, 935 F.3d 558, 571 (7th Cir. 2019) (holding that the court did not plainly err in treating two sales of the same type of drug as separate courses of conduct, as they involved different buyers and quantities and took place in different cities seven months apart); *Butler*, 777 F.3d at 388–39 (holding that the Guidelines require "a more searching inquiry" beyond whether the offenses "happen only to be similar in kind").

The standard of review matters, too. The question is not whether another judge could find in similar circumstances that the offenses formed part of the same course of conduct, or even whether the judge here erred in finding to the contrary. Rather, the question is whether the offenses so clearly or obviously qualify as relevant conduct on this basis that the district court was "'derelict in countenancing' [a contrary finding], even absent the defendant's timely objection." *United States v. Chaparro*, 956 F.3d 462, 484 (7th Cir. 2020) (quoting *United States v. Turner*, 651 F.3d 743, 751 (7th Cir. 2011)); *see also Clark*, 935 F.3d at 571 (declining to find plain error despite some similarities in the two offenses). Given the many distinctions between his abuse of a child and his later possession of images depicting child pornography, Boyle cannot meet that standard here. *See Clark*, 935 F.3d at 571.

*Subsection (a)(3)*. Subsection (a)(3) includes "all harm that resulted from the acts" in the prior subsections. § 1B1.3(a)(3). Boyle's state offense, which occurred on or before February 3, 2019, was not harm that resulted from the later abuse he committed on February 4, 2019, as charged in Counts 1 through 7. Nor was that offense a harm that resulted from Boyle's possession of other images of child pornography, as charged in Count 8. This subsection thus does not apply, and Boyle does not argue otherwise.

*Subsections (a)(4) and (b).* Finally, § 5G1.3(b) does not include subsections (a)(4) or (b) of § 1B1.3, each of which refers to any "information specified in" the applicable guideline. Conduct that only qualifies as relevant conduct under those provisions thus does not warrant a concurrent sentence under § 5G1.3(b). It does not matter, therefore, whether Boyle's state conviction might qualify as relevant conduct to the extent it supports the "pattern" enhancement under § 2G2.2(b)(5). *See* § 2G2.2 cmt. n. 1 (noting that the pattern enhancement can apply regardless of whether the other instances of abuse "occurred during the course of the offense"). Likewise, it does not matter that the state conviction might support the Chapter Four "pattern" enhancement under § 4B1.5(b). "Relevant conduct" for purposes of Chapter Four is defined solely by subsection (b). § 1B1.3(b). Thus, a Chapter Four enhancement could not warrant the application of § 5G1.3(b), which refers only to portions of subsection (a). *United States v. Hoffman*, 847 F.3d 878, 882 (7th Cir. 2017) (holding likewise as to § 5G1.3(c), which also refers only to same three subsections of § 1B1.3(a)).

As a result, Boyle has not shown that his state conviction qualifies as relevant conduct under any of the subsections referenced in § 5G1.3(b)—nor that it so obviously qualifies under those subsections as to satisfy plain error review. And because § 5G1.3(b) does not apply, the only applicable guideline is a policy statement that leaves to a court's discretion whether to run the sentences

concurrently or consecutively. § 5G1.3(d).[10] The district court did not, therefore, fail to consider any applicable guideline provision, so it did not commit any procedural error at sentencing.

### III. Boyle's Sentence Is Substantively Reasonable And Well-Justified

Boyle finally challenges his sentence's substantive reasonableness, arguing that his de facto life sentence is unreasonable and that the district court did not adequately explain the need for that sentence. Def. Br. 18–20. The district court reasonably concluded, though, that Boyle deserved to spend the rest of his life in prison. Boyle inflicted unthinkable abuse on ████████████, and he also took pleasure in depictions of other children's abuse or sexually explicit conduct. Boyle cannot overcome the presumption of reasonableness that applies to his below-guideline sentence. Nor has he shown any inadequacy in the court's explanation. The court offered a detailed, overarching explanation for why Boyle deserved to spend the rest of his life in prison, and it structured the sentence to achieve that outcome. Though the result is harsh, the district court amply explained why Boyle's horrific conduct warranted it.

---

[10] The application notes to that guideline include some factors that a court may consider. § 5G1.3 cmt. n.4. Those factors are not mandatory, though. *Nania*, 724 F.3d at 838. Regardless, the district court's explanation substantially addressed those same factors, Sent. Tr. 28–32, and Boyle does not argue otherwise on appeal.

A. Standard of Review

This Court reviews a sentence's substantive reasonableness for abuse of discretion. *United States v. Bour*, 804 F.3d 880, 886 (7th Cir. 2015). In conducting that review, this Court does "not substitute [its] judgment for that of a district judge, who is better situated to make individualized sentencing decisions." *United States v. Porraz*, 943 F.3d 1099, 1104 (7th Cir. 2019). In addition, sentences within or below the guideline range are presumed reasonable on appeal. *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Law*, 990 F.3d 1058, 1066 (7th Cir. 2021). This Court will "uphold a sentence so long as the judge offers an adequate statement of his reasons consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a)." *Porraz*, 943 F.3d at 1104. "The rationale need only be sufficient 'for meaningful appellate review.'" *United States v. Ramirez*, 983 F.3d 959, 962 (7th Cir. 2020) (quoting *United States v. Vasquez-Abarca*, 946 F.3d 990, 993 (7th Cir. 2020)).

B. The District Court Did Not Abuse its Discretion in Imposing a Below-Guideline Sentence

The district court reasonably concluded that Boyle deserved to spend the rest of his life in prison, and it adequately explained and implemented that sentence, so it did not abuse its discretion.

1.  Boyle's sexual abuse of ██████████ warranted a life sentence

Boyle sexually abused ██████████████, and he live-streamed that abuse on the internet. PSR ¶¶ 16, 22–23. He also collected images of other children's exploitation, which he used for his own gratification. *Id.* ¶¶ 19, 24. That conduct came on the heels of a years-long pattern of committing sexual acts against ██ ██████████. *Id.* ¶¶ 26, 108. It is difficult to overstate the seriousness of that conduct and the suffering it wrought on the victims, and this Court has often affirmed de facto life sentences for defendants who engaged in such egregious abuse of children. *E.g., Nania*, 724 F.3d at 842 ("[The defendant's sentence is indeed long, but long sentences are no stranger to federal courts of appeals in child pornography cases. The senseless acts of these criminals damage children for the rest of their lives.") (internal citations omitted); *United States v. Bour*, 804 F.3d 880, 887 (7th Cir. 2015); *United States v. Eckstrom*, 626 F. App'x 640, 643 (7th Cir. 2015); *United States v. Bostic*, 491 F. App'x 731, 732 (7th Cir. 2012) (dismissing as frivolous an appeal of a de facto life sentence).

In addition, a below-guideline sentence is presumed reasonable on appeal. *Law*, 990 F.3d at 1066. A defendant bears the burden of overcoming that presumption. *Nania*, 724 F.3d at 839. Boyle's guideline sentence was 2,760 months—the sentencing table recommended a life sentence, but the statutory maximums limited that term to 230 years, or 2,760 months. Boyle received a

sentence of fifty years, or 600 months, which is far below that term.[11] Even if one were to factor in the state sentence, which produced an aggregate term of ninety years, that term would still fall well below the guideline sentence. This Court has never found a below-guideline sentence to be substantively unreasonable, *United States v. Castro-Aguirre*, 983 F.3d 927, 944 (7th Cir. 2020), and Boyle offers no basis to overcome the presumption of reasonableness here.

2.   The district court sufficiently justified and implemented that sentence

Instead, Boyle argues primarily that the district court failed to adequately ground its decision in the § 3553(a) factors, particularly in deciding to impose consecutive terms.[12] Def. Br. 18–20. This argument is mistaken. The district court made abundantly clear that it intended to impose a life sentence, and it supported that decision with a discussion of the § 3553(a) factors. It also explained how running some—but not all—of the sentences consecutively sufficed to achieve that result. No more was required.

---

[11] That a fifty-year sentence was still so far below the guideline sentence illustrates the egregiousness of Boyle's offense, which produced such a long guideline term to begin with.

[12] This argument might be better characterized as a procedural challenge, *see Gall v. United States*, 552 U.S. 38, 51 (2007) (describing "failing to consider the § 3553(a) factors" and "failing to adequately explain the chosen sentence" as examples of procedural errors), but this Court has also evaluated a sentence's substantive reasonableness by reference to the court's reasons for imposing the sentence. *E.g.*, *Porraz*, 943 F.3d at 1104.

Contrary to Boyle's suggestion that the district court did not "appreciate[] the severity of the sentence" (Def. Br. 20), the court not only acknowledged (repeatedly) that it was imposing a de facto life sentence, it minced no words in making clear that it intended that precise result: "Mr. Boyle, you sentenced ███ ███████ to life, a life questioning herself, asking herself what she did wrong. You deserve the same sentence so then you can consider what you did wrong." Sent. Tr. 30. Likewise, in response to defense counsel's assertion that the "real question" at sentencing was whether Boyle deserved a "couple of years breathing free air" after completing his state sentence, *id.* at 24, the court stated: "the answer in my mind is no. That would allow him to share the same air as ██ ███████, the one he sentenced to a lifetime of nightmares and self-doubt." *Id.* at 28.

The district court discussed at length why the § 3553(a) factors warranted that outcome. Naturally, the nature and circumstances of the offense weighed heavily in the court's analysis, as did the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. § 3553(a)(1), (a)(2)(A). The court noted that Boyle not only sexually abused ██ ███████, but that he also streamed that abuse for his "sick and perverted friends" on the internet to see, and further sought out sexually explicit images of other children. Sent. Tr. at 30–31 (noting also that "the images . . . that were

45

perpetuated were not enough; he needed to stream his own sexual abuse

towards ███████████ ”).

The court had also listened to statements from the victim (as read by the

prosecutor) and the victim's mother, each of whom described how their lives had

been upended by Boyle's abuse. *Id.* at 6–13. The court discussed the profound

harm that Boyle inflicted on both of them—harm they would have to live with

for the rest of their lives. *Id.* at 28–30. It explained that the gravity and duration of

that harm warranted the same punishment for Boyle. *Id.* at 28 (explaining that

Boyle did not deserve freedom, as he sentenced ████████████ "to a lifetime of

nightmares and self-doubt"), 30 (explaining that Boyle deserved the same life

sentence that he imposed on ███████████).

As to the need to protect the public from further crimes of the defendant,

§ 3553(a)(2)(C), the court noted that while it could not protect the victim from

everybody for the rest of her life, it "can protect [her] from Mr. Boyle." Sent. Tr.

30–31. In fact, Boyle had "reported to the psychologist that he was happy to be in

custody so he couldn't abuse ███████████ again." *Id.* at 29. The court also

considered Boyle's history and characteristics. § 3553(a)(1). It noted that Boyle

was thirty-six years old with a history of depression and anxiety, and had been

employed since 2008. Sent. Tr. 29. It further acknowledged that Boyle had

suffered from both physical and sexual abuse himself. *Id.*

Considering those factors, the district court concluded that the appropriate sentence was one that would keep Boyle in prison for the rest of his life. Sent. Tr. 28–32. It acknowledged, though, that it did not have to impose the statutory maximum sentence—230 years—to accomplish that result. *Id.* at 28. Accordingly, it decided to impose concurrent thirty-year sentences on Counts 1 through 7 (for production), which involved similar conduct over the course of the same day, but it ran those sentences consecutively to a twenty-year sentence on Count 8 (for possession), which involved subjecting "other young people who have been abused to the perverted and distorted and sick nature of those seeking the internet for their satisfaction." *Id.* at 31–32. That produced a total sentence of fifty years. *Id.* at 32. Finally, the court decided to impose that term consecutively to the forty-year state sentence, which involved "a separate course of conduct." *Id.* The court acknowledged that this produced an aggregate sentence of ninety years, which, if served in full, Boyle would complete at the age of 126—thus accomplishing the court's intent to impose a de facto life sentence. *Id.*

The district court's discussion shows that it grounded its decision in the § 3553(a) factors, and more than suffices to permit "meaningful appellate review," which is all that is required. *Ramirez*, 983 F.3d at 962. Rather than engaging with that analysis as a whole, Boyle focuses on the district court's observation that the state sentence reflected a "separate course of conduct" from

the federal offenses. Def. Br. 19. Boyle disagrees with that characterization, so he argues that the court's decision to impose a consecutive sentence, producing a de facto life sentence, was unreasonable.[13] *Id.*

But that argument overlooks the rest of the court's analysis. As just discussed, the court explained why a life sentence was warranted, and how consecutive terms accomplished that result. No further explanation was necessary.[14] *See United States v. Esposito*, No. 20-1124, 2021 WL 2385407, at *3–4 (7th Cir. June 11, 2021) (holding that the district court did not err when it first decided that a de facto life sentence was necessary, then imposed counts consecutively to the extent required to achieve that result); *United States v. Orozco-Sanchez*, 814 F.3d 844, 849 (7th Cir. 2016) (holding that a court need not offer "a second full explanation of the § 3553(a) factors" in imposing a consecutive sentence); *Bour*,

---

[13] Boyle also suggests (Def. Br. 11, 19) that a consecutive sentence was unwarranted because the Guidelines already accounted for his state sentence. To the contrary, his guideline sentence would have been the same even without the state conviction or its underlying conduct—the production counts themselves (and the five-level increase they triggered for the number of units) would have sufficed to produce a total offense level over 43. *See* PSR ¶¶ 104–07. This argument also overlooks that, even with a consecutive sentence, the aggregate still fell well below the guideline sentence of 230 years.

[14] Boyle's passing suggestion (Def. Br. 11) that the court failed to adequately explain its decision to impose the sentences on the production and possession counts consecutively to each other fails for similar reasons. Boyle received a sentence well below the guideline sentence, and the court explained why the total sentence was reasonable. No more justification was required for imposing consecutive terms to produce that total sentence. *See Esposito*, 2021 WL 2385407, at *3–4; *Bour*, 804 F.3d at 887. Regardless, as the court noted, the offenses involved different victims and different harms, and were charged as having occurred on different days. Sent. Tr. 31.

804 F.3d at 887 ("In short, the judge believed it was necessary to ensure that [the defendant] would never leave prison. Because this is a justified reason for consecutive sentences, there was no abuse of discretion in substantive terms.").

In any event, the district court accurately described the state conviction as reflecting a separate course of conduct from the federal offenses. Boyle's federal convictions arose from Boyle's exploitation of ██████ on a single day, as well as his collection of materials depicting other children. PSR ¶¶ 16, 19. His state conviction, meanwhile, arose from a previous instance of the abuse alone. *Id.* ¶ 120. Not only are the time periods distinct, but the conduct the state conviction addressed was the underlying abuse, while the conduct the federal conviction addressed was the recording and distribution of sexually explicit conduct.

That distinct conduct, causing distinct harm, warrants distinct punishments. As this Court explained in *Nania*, "the federal and state offenses target different conduct to protect different interests. The state offenses punished the abusive conduct itself, while the federal offense punished the memorialization of that abuse in pornography." 724 F.3d at 841. That is equally true for Boyle's offenses. The district court therefore reasonably characterized Boyle's state conviction as involving a separate course of conduct from his federal convictions. And because that was only one part of the court's overarching explanation for why Boyle deserved a life sentence, the district court adequately explained its decision to

impose consecutive sentences. This Court should therefore affirm Boyle's well-deserved sentence.

## CONCLUSION

This Court should affirm the district court's judgment.

Respectfully submitted,

DOUGLAS J. QUIVEY
  *Acting United States Attorney*

By:     /s/ JEFFREY D. KIENSTRA
  *Assistant United States Attorney*
  *Office of the United States Attorney*

  *One Technology Plaza*
  *211 Fulton Street, Suite 400*
  *Peoria, Illinois 61602*
  *(309) 671-7050*

51

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and (a)(6), as modified by Cir. R. 32(b), because I have prepared this brief in proportionally spaced typeface using Microsoft Word for Office 365 in 13-point (body) and 12-point (footnotes) Book Antiqua font. I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as modified by Cir. R. 32(c), in that it contains 12,264 words.

/s/ JEFFREY D. KIENSTRA
*Assistant United States Attorney*

## CERTIFICATE OF SERVICE

I certify that on June 24, 2021, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit

by using the CM/ECF system. I further certify that all participants in this case

are registered CM/ECF users and that service will be accomplished by the

CM/ECF system.

/s/ JEFFREY D. KIENSTRA
*Assistant United States Attorney*