In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 21-1093

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GARY L. BOYLE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:19-cr-20019 — **James E. Shadid**, *Judge.*

_____

ARGUED OCTOBER 28, 2021 — DECIDED MARCH 14, 2022

_____

Before RIPPLE, HAMILTON, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Gary Boyle challenges a 50-year
federal sentence he received for producing and possessing
child pornography. The district court ran the time consecutive
to a 40-year state sentence Boyle had already received for sim-
ilar conduct. The district court was well aware of the length
and gravity of the 90-year cumulative sentences. What mat-
tered most, however, was the atrocity of Boyle's offense

conduct—his sexual assault of an eight-year-old girl on a video livestreamed to other child sexual predators. We affirm.

**I**

Gary Boyle's legal trouble began in February 2019, when Kik Messenger—a smartphone application that allows users to send texts, pictures, and videos—flagged images and videos of suspected child pornography for law enforcement officials. Agents investigated and confirmed that the images and videos depicted a young girl, about eight years old, undressing and engaging in explicit sexual acts with an adult male.

Law enforcement traced the files to Gary Boyle's home in Decatur, Illinois. After agreeing to speak with the agents, Boyle admitted not only that he was the man in the images, but also that he used the flagged Kik account to receive and share child pornography. He told agents that on February 4, 2019 he sexually abused the child and "live-stream[ed] his sexual abuse . . . to the other members in his Kik group." A subsequent search of Boyle's cell phone revealed 100 images and videos of children other than the victim being sexually abused and exploited. The eight-year-old told a family member that the sexual abuse started when she was five.

State and federal charges quickly followed. In July 2020 Boyle pled guilty in state court to a single count of predatory criminal sexual assault of a child. The count charged that the sexual assault occurred between October 10, 2010 and February 3, 2019. The state court sentenced Boyle to 40 years' imprisonment.

Boyle's federal case was different. It focused not on the sexual abuse itself but on his production and distribution of visual depictions of that abuse. Seven of the eight federal

charges stemmed from the videos and images Boyle created on February 4, 2019—the day he livestreamed the sexual assault to other members of the Kik messenger group. The eighth count charged possession of child pornography. The district court accepted Boyle's guilty plea to all eight charges in October 2020.

After hearing from both parties at sentencing and resolving Boyle's two objections to the presentence investigation report, or PSR, the district court adopted the PSR's calculation of a total offense level of 43 and a criminal history category of IV. Those totals resulted in an advisory Guidelines range of life imprisonment, subject to the cumulative statutory maximum of 230 years for all offenses of conviction.

The government asked for a stiff sentence. Emphasizing the gravity of Boyle's conduct, it urged the district court to sentence him to 230 years—the statutory maximum 30-year sentence on each of the seven production counts plus the maximum 20-year sentence on the possession count. And based on its view that the creation of each picture and video inflicted distinct and incremental harm on Boyle's victim— harm wholly separate from the traumatic abuse itself—the government asked the court to run those sentences both consecutively to one another *and* to Boyle's 40-year state sentence. Defense counsel acknowledged that "the Court c[ould] fashion any sentence it wishe[d]" within the "thousands of months" it had to work with, but reiterated Boyle's position that running any and all federal time concurrent with the 40-year state sentence would achieve the sentencing aims of 18 U.S.C. § 3553(a).

The district court also heard at sentencing from Boyle's victim and her mother. The child, 10 at the time, appeared in

court and submitted a written statement for the prosecutor to read aloud. She described how Boyle's sexual abuse had filled her with "ugly thoughts and feelings" that made her angry, sad, and scared—and left her feeling, at times, like she "shouldn't be alive." She told the district judge that, although she felt like the abuse she suffered was her own fault, she remained determined (with the help of others) not to allow Boyle's wrongdoing to destroy or define her.

When it came her turn, the child's mother expressed her own overwhelming guilt for not keeping her daughter safe. She told the district judge that Boyle had stolen "her [daughter's] childness, her innocence, her dreams, self-esteem, and self-worth" and that her daughter had become fearful, distrustful, isolated, and uncomfortable with physical affection. In her view, "no amount of prison time will ever be enough" for making the young girl "a statistic" and creating images and videos of her abuse that would never go away.

After hearing these statements, considering all other information presented by the parties, and applying the factors in 18 U.S.C. § 3553(a), the district court sentenced Boyle to 50 years' imprisonment. The court imposed 30-year sentences on each of the seven production counts, stating that each of those sentences would run concurrent with one another because Boyle's conduct "occur[ed] . . . over the course of the same day." On top of those 30-year sentences, however, the district court imposed a 20-year sentence on the possession count. The court explained that the child pornography possession charge was a "completely different count on a completely different day and a completely different time period," and subjected children other than Boyle's victim "to the perverted

and distorted and sick nature" of individuals seeking out child pornography on the internet.

Finally, the district court announced that Boyle's cumulative 50-year federal sentence would run consecutive to his 40-year state sentence because "there could be no question" that the conduct at the heart of Boyle's state conviction—the sexual assault, itself—"was a separate course of conduct" from the production and possession offenses at issue in his federal prosecution.

In imposing Boyle's sentence, the district court expressed his understandable disgust at the conduct before him. The court recognized that Boyle did not need to be sentenced to 230 years' imprisonment to accomplish the objectives of federal sentencing in § 3553(a). And so, too, did the court acknowledge in mitigation that the horrors of Boyle's own background contributed, at some level, to the sexual abuse he inflicted on the victim. In weighing everything, though, the district judge underscored that Boyle not only effectively sentenced the child "to a lifetime of nightmares and self-doubt" through his abuse but also immortalized her trauma by livestreaming it over Kik to others. And the court pledged to protect the victim and her mother from Boyle for the rest of their lives—hence the decision to ensure, through the 50-year consecutive sentence, that Boyle would face combined federal and state sentences of "of 90 years or nearly 90 years."

Boyle timely appealed.

## II

"Federal criminal sentences must be both procedurally sound and substantively reasonable," and Boyle attacks his

sentence on both fronts. *United States v. Morgan*, 987 F.3d 627, 631–32 (7th Cir. 2021).

We review sentencing challenges not presented to the district court only for plain error. See *United States v. Roush*, 2 F.4th 616, 618 (7th Cir. 2021). If the district court properly calculated the advisory Guidelines range, we review the ultimate sentence deferentially under an abuse of discretion standard. See *Gall v. United States*, 552 U.S. 38, 51 (2007).

A

Boyle first contends that the district court committed two procedural errors in calculating the advisory Guidelines range of life imprisonment. He sees what he calls double- or even triple-counting in the district court's determination of his offense level and criminal history category. Boyle also insists that the district court overlooked key guidance in U.S.S.G. § 5G1.3 requiring the imposition of a concurrent (not consecutive) federal sentence. Both errors, Boyle presses, require resentencing.

Boyle is right that a district court's failure to correctly calculate a defendant's Guidelines range constitutes procedural error. See *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). How closely we review alleged errors, however, turns on whether Boyle preserved his objections to the Guidelines calculations in the district court. A defendant waives an objection if he "intentionally relinquishes or abandons" an argument below. *United States v. Oliver*, 873 F.3d 601, 607 (7th Cir. 2017) (citation omitted). In those circumstances, we will not entertain the objection for the first time on appeal. See *id.* But if there is no "strategic justification" for the defendant's failure to make the objection in the district court, and he "merely

fail[ed] to raise an argument due to accident or neglect," we treat the argument as forfeited, not waived. *Id.*; see also *United States v. Anderson*, 604 F.3d 997, 1001–02 (7th Cir. 2010). To overcome forfeiture, the defendant must show that the district court committed plain error that affected both his substantial rights and the fairness or integrity of the proceedings. See *United States v. Olano*, 507 U.S. 725, 735–36 (1993); *Oliver*, 873 F.3d at 607.

1

We see nothing to Boyle's objection that the district court, in determining the advisory Guidelines range, engaged in double counting by "conflat[ing] offense characteristics, relevant conduct, and criminal history score."

Foremost, Boyle waived the contention by failing to raise the point in the district court. We can infer that Boyle's trial counsel made a "knowing and intentional decision" not to do so because counsel raised two other (albeit, unsuccessful) objections to the PSR and ultimately agreed at sentencing that the offense level and criminal history category calculations were correct. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) (acknowledging there "may be sound strategic reasons why a criminal defendant will elect to pursue one sentencing argument" instead of another but warning that "when the defendant selects as a matter of strategy, he also waives those arguments he decided not to present").

Nor is it difficult to "conceive of [a] strategic reason" for counsel's decision to forgo the argument Boyle now presses on appeal. *Oliver*, 873 F.3d at 607. Not only is double counting "generally permissible unless . . . expressly prohibit[ed]," but the Guidelines provisions at issue here specifically permit the

double counting Boyle now challenges. *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012); see also U.S.S.G. § 2G2.2(b)(5) & app. notes 1 & 5 (clarifying that a defendant's prior conviction accounted for as part of a "pattern of activity involving the sexual abuse or exploitation of a minor" is "not excluded from consideration of whether that conviction receives criminal history points"); U.S.S.G. § 4B1.5(b) & app. note 4 (explaining that "[a]n occasion of prohibited sexual conduct may be considered . . . without regard to whether the occasion" occurred during the commission of the federal offense or resulted in a conviction).

2

Boyle's second argument requires more unpacking. He points to U.S.S.G. § 5G1.3(b)(2) which, he says, required the district court to run the 50-year sentence concurrently to the remainder of his 40-year state sentence—a 40-year difference in his total term of incarceration. But Boyle forfeited this point by not raising it in the district court, leaving us to review only for plain error.

On the merits, we see no error. Explaining why requires us to get into the weeds of the applicable Guidelines.

The beginning point is § 5G1.3(b) itself. If a defendant has an undischarged term of imprisonment, and that sentence "resulted from another offense that is relevant conduct to the instant offense of conviction" then "the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b). In "any other case involving an undischarged term of imprisonment," the district court has the discretion to run the federal sentence "concurrently, partially concurrently,"

or, as here, "consecutively to" the defendant's state sentence. *Id.* § 5G1.3(d).

Applying the direction from those provisions requires the threshold determination of whether Boyle's state offense constituted "relevant conduct" to his federal offense. To answer that question, we need to follow the cross reference in § 5G1.3(b) to the Guidelines' definition of "relevant conduct" in § 1B1.3. Section 5G1.3(b) only draws on some parts of § 1B1.3's definition, however. By the terms of the cross reference, a defendant's state conviction is "relevant conduct" only if it encompasses: (1) acts or omissions committed by the defendant that occurred during the commission of or in preparation for the federal crime; (2) acts or omissions that were part of the "same course of conduct or common scheme or plan" as the federal conviction; or (3) harm that resulted from the federally-charged conduct. U.S.S.G. § 5G1.3(b) (framing the inquiry as whether the state offense is relevant conduct "under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3"); *id.* § 1B1.3(a)(1)–(3). The "same course of conduct" and "common scheme or plan" tests apply only if the federal count of conviction may be grouped under § 3D1.2(d) of the Guidelines. *Id.* § 1B1.3(a)(2).

The Sentencing Commission's direction finds straightforward application on the record before the district court. Boyle's state court offense conduct—a single act of sexually assaulting a child—is not "relevant conduct" to his federal convictions for producing sexually exploitative images and possessing child pornography.

Two of the three possible "types" of relevancy can be ruled out based on the chronology of events: the conduct at the heart of Boyle's state charge occurred on or before February

3, 2019, but his federal conviction captured conduct from February 4, 2019 onward. The abuse underpinning his state conviction was therefore not committed "during the commission of" his federal offenses, nor can Boyle's earlier sexual abuse of the victim reasonably be characterized as conduct committed "in preparation for" his federal offenses. *Id.* § 1B1.3(a)(1). And because the state conduct occurred before the federal conduct, Boyle's state conviction does not encompass "harm that resulted from" his federal conduct either. *Id.* § 1B1.3(a)(3).

These conclusions narrow the pertinent inquiry. Boyle's state conviction is only "relevant conduct" for § 5G1.3(b) purposes if the sexual abuse was part of the "same course of conduct" or a "common scheme" as his production or possession of images and videos of child sexual abuse. At this point, however, yet another Guidelines cross reference comes into play because the definition of relevant conduct in § 1B1.3(a)(2) applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." And by following that cross reference to § 3D1.2(d), we learn that Boyle's seven counts of conviction for producing child pornography under 18 U.S.C. § 2251(a) cannot be grouped. *Id.* § 3D1.2(d) (explaining that "[s]pecifically excluded from the operation of this subsection" are offenses covered by § 2G2.1, which includes violations of 18 U.S.C. § 2251(a)).

That leaves only Boyle's conviction for possession of child pornography. Possession offenses may be grouped under § 3D1.2(d). *Id.* (stating that offenses covered by § 2G2.2, including violations of 18 U.S.C. § 2252A(a)(5)(B), "are to be grouped"). Boyle's state conviction may therefore qualify as

relevant conduct under § 1B1.3(a)(2) if the sexual abuse of the minor victim was part of the "same course of conduct" or "common scheme or plan" as his possession of child pornography.

"For two or more offenses to constitute part of a common scheme or plan," the Guidelines explain, "they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *Id.* § 1B1.3 app. note 5(B)(i). Alternatively, offenses may be deemed part of the "same course of conduct" if they are sufficiently related as to constitute "part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 app. note 5(B)(ii).

Against this backdrop, we conclude that Boyle's state sexual abuse conviction is neither part of a "common scheme or plan" nor part of the "same course of conduct" as his federal child pornography possession conviction. The two offenses involved different victims, constituted materially different conduct, and were at least somewhat separated in time.

Viewed from a high enough level of generality, Boyle's offenses of possessing child pornography and sexually abusing a child are undoubtedly related: both involve the sexual exploitation of children. But the Sentencing Guidelines demand a more particular comparison of the conduct at issue, and Boyle's state offense is not "relevant conduct" under either the "common scheme" or "same course of conduct" test prescribed by the Guidelines.

*          *          *

In sum, because Boyle's state offense was not "relevant conduct" to his federal offense within the meaning of

§ 5G1.3(b), the district court did not err in imposing his 50-year federal sentence to run consecutive to his 40-year state sentence. Neither of Boyle's alleged procedural errors therefore warrants remand for resentencing.

B

That leaves Boyle's challenge to the substantive reasonableness of his 50-year federal sentence. Our review is deferential, as we will "presume that a within-guidelines sentence is reasonable." *Morgan*, 987 F.3d at 632 (cleaned up).

Everyone recognizes that Boyle's 50-year federal sentence—which he will only begin to serve after finishing his 40-year state sentence—effectively amounts to a life sentence. "Barring proceedings that vacate" part of Boyle's sentences, "he will die in prison" and "death in prison is not to be ordered lightly." *United States v. Nania*, 724 F.3d 824, 841 (7th Cir. 2013) (citation omitted); see also *United States v. Patrick*, 707 F.3d 815, 820 (7th Cir. 2013) ("[A] sentence of death in prison is notably harsher than a sentence that stops even a short period before.").

Boyle's challenge to the length of his sentence blends substantive and procedural concerns but, at bottom, rests on his belief that the district court inadequately justified its decision to impose a consecutive federal sentence. To our eye, however, three interrelated and permitted considerations stand out in the district court's remarks at sentencing:

- *Gravity of Offense Conduct*: Faced with conduct that defense counsel conceded was "abhorrent" and "terrible and damaging and tragic," the district court emphasized that Boyle "deserve[d] the same sentence" that

he imposed on his victim—"a lifetime of nightmares and self-doubt"—so he "can consider what [he] did wrong."

- *Victim Protection*: The court was resolute in its desire to impose a sentence that would protect the victim and her mother from Boyle. In short, the district court selected a sentence sure to prevent Boyle from abusing or even "shar[ing] the same air as [the victim]" ever again.

- *Punishing Distinct Crimes*: The district court saw Boyle's federal offense conduct as distinct from his state offense conduct. Indeed, it saw the production and livestreaming of the video of his sexual assault of the child as acts reflecting incremental wrongdoing. As the court put it, Boyle decided that the abuse itself was "not enough" and that he instead "needed to stream his own sexual abuse" of the victim for others to see, thereby producing enduring images of that abuse that would follow the child forever. And Boyle's possession of child pornography—conduct he engaged in "on a completely different day and a completely different time period"—further "subject[ed] other young people who have been abused to the perverted and distorted and sick nature of those seeking the internet for their satisfaction."

On this record, we have no doubt the district court adequately considered the § 3553(a) sentencing factors. The

district court selected and structured a sentence to recognize, perhaps above all else, that the "senseless acts" of Boyle and offenders like him "damage children for the rest of their lives." *Nania*, 724 F.3d at 842. The court could have imposed a longer federal sentence but chose to reach the same result by running Boyle's federal sentence consecutive to his state sentence. See U.S.S.G. § 5G1.3(d). That was not an abuse of discretion.

Because the district court properly calculated Boyle's advisory Guidelines range and did not abuse its discretion in imposing a consecutive 50-year federal sentence, we AFFIRM.